The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. This is our case number 421-0355, State of Illinois v. Charles Drain. Counsel for the appellant, would you please state your name? Good afternoon, Your Honors. Blair Dalton on behalf of the appellant, Charles Drain. Okay, and counsel for the appellee? Timothy James Londrigan, counsel for appellee, representing State's Attorney's Appellate Prosecutor's Office. Okay, thank you, counsel. Ms. Dalton, you may proceed on behalf of the appellant. Thank you, Your Honors. At the outset, this case is asking for a similar analysis in which this court conducted in Sadiq with a couple of additional issues for review. Those issues namely are, was the initial traffic stop of Mr. Drain valid? Was he subjected to a custodial interrogation without the benefit of Miranda warnings? Assuming the court were to find the initial stop was lawful, was it prolonged beyond the time reasonably necessary to complete the mission of the stop? And assuming it was prolonged, was that continued detention supported by probable cause? And finally, did the state fail to establish the reliability of the dog's positive alert on Mr. Drain's vehicle to prove the warrantless search of his vehicle was reasonable? Starting with the first issue, was the initial traffic stop valid? The appellant argued... Counsel, excuse me. Good afternoon. On that subject, I do have a question for you. We know that the section of the statute that applies, 907C, says in relevant part that, beginning of it, a person who drives an approaching vehicle shall, proceeding with due caution, yield the right of way by making a lane change into a lane not adjacent to that of the authorized emergency vehicle, if possible, with due regard to safety and traffic conditions. Now, you argue that it wasn't possible for the defendant to change lanes due to the semi-tractor trailer that was in the lane next to him, but the trial court found otherwise, and there are factors that would support that decision, are there not? It was a clear day. There were no obstructions. The squad car's lights were on. The officer actually stood out there and pointed in the direction that he thought the defendant should move his car. So, why is the trial court's decision against the manifest weight of the evidence? Well, Your Honor, I appreciate the question. Although all of those factors are and were indeed true at the time of the stop, what the law is stating is that upon approaching the stationary vehicle, there's no specification in Scott's law as to when an approaching vehicle needs to make that lane change into the furthest lane away from the stationary vehicle. The trial court got it wrong in a couple of ways, the most important being that the trial court indicated in its ruling that Mr. Drain did not even attempt to get over into the furthest lane, and that was not corroborated by the video evidence collected from the deputy's car, which showed that Mr. Drain's brake lights were on. That was also corroborated by the deputy's testimony. The deputy further had admitted that if Mr. Drain had attempted to get into the left lane at the time he was approaching or passing the stationary vehicle while maintaining the same rate of speed as the semi, it's possible he would have hit the semi, thereby showing that it would have been unsafe if he had maintained that same speed as the semi. So in braking and trying to get behind the semi before approaching and passing the stationary vehicle, Mr. Drain was attempting to substantially comply with Scott's law, and that's what the evidence established. Now I'm not sure I followed what you said because the slowing down would be subsection two, I was referring to subsection one, and the trial court said that two really didn't apply. I believe there were 11 seconds or so in the video, if one were to watch the video, between the time defendant's car became visible and then passed and then the truck was visible or the truck pulling the trailer was visible also, and the car, defendant's car was behind the truck. So there were 11 seconds between, at least 11 seconds, between the time that that became visible, the two vehicles became visible and the defendant passed the car, the squad car. So why it wouldn't have been possible he was braking anyway, I'm not sure I follow what you were saying because it's not a question of slowing down, it's a question of moving over, and we also have in the record that the defendant told the officer spontaneously as he was getting into the officer's squad car that he didn't know about the law that he had to pull over into the next lane. So, Your Honor, to answer your question, under the first section, C1, that a car is supposed to yield the right of way by making that lane change furthest away from the stationary vehicle has to be, if it's possible, with due regard for safety and traffic conditions. And the argument is that it wasn't possible while he was approaching and passing the stationary vehicle because at that time the semi was next to him. He certainly attempted to do so but by the time he approached and passed the stationary vehicle he wasn't able to do so. I think it bears mentioning that the Scott's law itself is not written very clearly. It doesn't specify anything other than while approaching the stationary vehicle so that's a very subjective objective term to use, both for the officer who's going to stop as well as the driver who may be stopped under Scott's law, but without more, just the mere fact that the law states upon approaching makes it clear that in this case with the video evidence, as it is, it is clear that Mr. Drains vehicle attempted to slow down to get into the furthest lane. And I think the other section of your question. Council is that based only on the fact that when he's essentially even with the squad car, his brake lights are on. I think his break, it's clear that his brake lights were on prior to passing the squad based upon where his car is in line with the 18 wheeler so you see that his car is backing further and further and further behind the 18 wheeler as he's approaching and Well, I think that that particular issue is answered by the video itself. So, the deputy asked, he's aware of Scott in name, and Mr drain response he is not. Now, I think that there are very many people in the state of Illinois, who are not aware of traffic violations by their specific name that being Scott's law, many people react just instinctively that they need to slow down and attempt to get furthest away from a stationary vehicle with lights on, which the argument is exactly what Mr Jane was trying to do in this case. So I have a question. The issue before this court isn't the sufficiency of the evidence to convict the defendant of this traffic violation. The issue before this court is the trial courts ruling and defendants motion to suppress and file that motion to suppress the claim that the police officers stop the vehicle. They're not a probable cause to do so based upon the alleged violation of Scott's law. So, the issue then is based upon the testimony of the police officer, and the other evidence before the trial court. Did the trial did the officer have probable cause to believe that Scott's law had been violated, thus justify his pulling over the defendant. And in making its determination. The trial court hears the officer considers all this evidence and decides whether or not the defendant is met his burden of demonstrating that the Fourth Amendment was violated this evidence needs to be suppressed. But isn't the fundamental issue before the trial court in this case whether the officer acted reasonably, whether his belief that Scott's law was was violated was reasonable. And given the evidence before the trial court. On what basis can we conclude that the courts, concluding that the officer acted reasonably was contrary to the manifest way to the evidence. Well your honor I think an officer might have a reasonable belief of a traffic infraction at the time that it's occurring, but a video evidence later reveals that the driver did not commit that traffic offense, then that rules the day and the, and the trial court heard the officer heard the officers description of the fairly lengthy time that passed from the time he first saw the defendant, and this truck in the circumstances, and the officers conclusion that the defendant could have and should have moved over to the left indeed making the unusual thing the usual step of gesturing pointing a moment to the left lane. They still disregarded. Why isn't that enough for the trial court to conclude that the officer acted reasonably with the officer reasonably concluded there was probable cause to believe that Scott's law been violated. Because the video evidence contradicted the officers original reasonable belief that a Scott's law violation had been had happened. The video evidence show evidence show that your client couldn't have moved during the 11 seconds from the right lane to the left lane. That's not what I'm arguing judge I'm arguing. That's what I'm asking the division to the video evidence show that your client could not have moved from the right lane to the left lane, as the officer signaled him to do. Yes, I think, to answer that question yes I think the evidence does show that at the time the officer was signaling Mr drain to move over into the furthest lane it would have been unsafe for him to do so, he would have either had to sped up to get past the semi in the front and cut the semi off or slow down quick enough to get behind the semi before passing the stationary vehicle. So let's go to the trial court have reached the opposite conclusion and concluded the manifest weight of the evidence, based in part of the officer's testimony was sufficient to show he acted reasonably and that's what the court concluded. Then, why don't you lose on this issue. I think the main thing that the trial court got wrong in issuing its opinion as to the traffic stop violation was that Mr drain made no effort to attempt to move over into the furthest lane, and the evidence both the testimony and the video evidence flies in the face of that conclusion by the trial court. Well, if the court accepted the officer's testimony that several seconds elapsed. Well, your client remained in the right lane. And he could have slowed down enough to get behind the truck, why isn't that sufficient for the officers justification, because the video evidence. I think is stronger than the officer's testimony it's the best evidence in this case because it shows exactly the situation as it was occurring as Mr drain was approaching and I think the most important thing here is the fact that the statute itself uses the word approaching. Can I ask you about that counselor. It has to use approaching right it doesn't. You can't require somebody to move over. When you're at the vehicle, the cars don't move side to side they have to gradually move so is it surprising or problematic that it says approaching. I don't think the word approaching is problematic I think the fact that there's no further description beyond approaching is problematic. I think that it when reasonably safe to do so that that sort of language would be better suited to be included in this sort of statute, instead of just using the word approaching and not having any explanation beyond that, to rely upon in issuing this sort of traffic ticket. Thank you. Seeing no further questions moving on to the next topic, whether or not Mr drain was in custody and subjected to custodial interrogation without the benefit of Miranda warnings at the time that deputy was asking him questions. So the issue here is obviously would a reasonable person feel free to decline the deputies demand. So I have a question on this. If we agreed with you on this point, what exactly are the statements of the defendant you're seeking to suppress. What did he say, the main statements that I would be seeking to suppress or the fact that he was bringing his grandmother a present. And that he had the present in the vehicle I think those, those. Why does any of that matter. Because if the defendant were to proceed on to trial that would indicate some knowledge as to what is in the trunk. Without that statement. And with the suppression of all statements that occurred after the dog indicated on the vehicle which were already suppressed by the trial court. That would only leave evidence that Mr drain was driving a rental vehicle in which his name was on and inside the trunk, there was a bag that contain narcotics. Well, why would the statements that issue deal with what was inside the trunk at all assuming the defendant wish to claim, he didn't know what was in the trunk. I'm not sure I understand that question your honor what you were. He was going. What was the statement was going to his grandmother's house. That's correct. Yes, to bring her a present. What is her, it had been her birthday. Yes. Okay. Did the statement say where the president was located. No, it did not. So there's no reason to think, and I wouldn't normally present whatever it was to be in the trunk is there. No, there isn't but I think if this case were to have proceeded to trial just the mere fact that Mr drain said that he had a present for his grandmother in the vehicle, and lo and behold, there is a present in the trunk and inside the present is where the narcotics are located wouldn't for some sort of knowledge that Mr drain knew what was inside that package, and therefore that would affect him at trial. Okay, by the way I want to before your time runs out I want to ask you about the dogs that you're, you challenge the visibility of the dogs that because there was no evidence regarding the training of the dog or the handler is that correct. Yes, there's no the state did not present. Because it's their burden to show that the warrantless search of the car was reasonable the state did not present any evidence to show that the reliability of the dog sniff. There was no foundation laid. Some an objection to this offer of testimony, why would the state think it necessary to have the court find it necessary that any further explication about the dogs ability or the handlers ability with the dog was required. Well, I think that's kind of tied into the argument that his trial counsel was ineffective, and that he did not object to the foundation of entering the dogs sniff and the dog result. Is it your claim that regarding the dog is his counsel was ineffective so we should view this as a claim of ineffective assistance of counsel or are you claiming leaving that aside that the evidence was not sufficient for the trial court to consider the testimony of the officer about the dog and how he handled the dog and the dog step. The latter judge the trial court made the determination regarding the dog without the proper foundation without the appropriate foundation as to the dogs reliability and making a positive alert on. But this, I'm sorry just a statement. But this was the burden of the defendant to establish the unreliability was it not that's what the case law tells us. Yes, Your Honor. So, the initial burden the prima facie burden is on the defendant and then it passes to the state to show that the warrantless search was reasonable and then it's up to the state to establish the reliability of the mechanism in question, and in this case that mechanism was the dog sniff, and no foundation was was late, other than just simply. He, he, he testified I mean did he not testify that he was a trained canine officer that he and the dog had experience that the dog was trained to detect narcotics I mean that was all in the record that was part of the foundation. And opportunity to question them about that. That is correct the defense failed to respond to the state's questioning with any additional questioning as to the reliability of the dog, but answering your first question, the state merely asked if they, if the officer had removed his canine from the vehicle, if he had walked the canine around the vehicle and if the canine had alerted to the possible presence of narcotics in the vehicle, all of which answers were in the affirmative. However, there was no evidence presented as to the certification that this canine was a well trained canine in any sense of the word, and for disability. Yes, your honor I do believe that because what case so says, well I compare it to what I will now compare it to a couple of other issues. For example, in a DUI case, even if the defense is not challenging the results themselves the state still has to present that the machine that was used for the breath breathalyzer was certified. So, let me go back to my question. This is hardly the first dog stiff case that we've had. If this is a requirement that certification must be proved beyond the kind of testimony that was presented in this case. Where's the case law that supports that. Illinois versus Cabalas, as well as Florida versus Harris. They deal with dog stuff cases, they do your honor, and what they say they detail that there needs to be at least some evidence presented that this was a well trained canine that alerted to the car alerted to the possible presence of narcotics in the car, some evidence is what these two cases say Florida versus Harris went much further than that. However, that was overruled by the United States Supreme Court, and those two cases together, meant that at least some evidence not the long list of different certifications and proof of past. I'm a licensed dog handler and I've trained with this canine would that be enough. I think that a little bit more would be required than that judge. Well, the fact that he was last certified in October of 2021 by the state of Illinois would be enough. Your time is up Council you have an opportunity, you will have an opportunity to address this again. Thank you. Good afternoon, your honors may please court and counsel. Initially, addressing. Number one, whether or not we have a violation of Scott's law I think the evidence is clear that we do. Clearly, the purpose of this law is to require drivers to move into the left hand lane when approaching an emergency vehicle that is parked itself on the shoulder on the right hand side of the roadway. This is pretty much an evidentiary argument. The trial court looked at the evidence and made a ruling based on that this defendant had more than appropriate time to observe the emergency vehicle and to make some effort to get into the left hand lane, and the council, excuse me, the, the statute doesn't define the word possible. However, so how should that term be interpreted. Is this a subjective decision that the trial court makes is an objective. And how do we determine if that was against the map is finding was against the manifest way to the evidence. Well, I think the initial viewpoint of it would be an objective one, unless there was some reason, if the defendant was incapacitated or somehow I handicapped in some fashion that may apply to the situation to make it subjective. Hard to understand that without being presented with what the facts in that particular case might be. But in this instance, you know you're looking at 11 seconds, we're in the only ever admitted by the defendant, that was made was the brakes being And that I think he has an affirmative obligation to do if the situation presents itself in here, the trial judge found that it did. I mean, this defendant had more than sufficient opportunity to get behind that semi tractor trailer to rule otherwise would be to suggest that he could parallel that trip that tractor trailer indefinitely, which is clearly not the intent of the law, it says impossible. So, if the court finds that it is possible for this defendant to have moved over before encountering the emergency vehicle, then you're in violation of Scott's law. But it's just a segment pointed out, that's not what we're dealing with here. The issue is not whether we have a violation of the law, but rather, was it reasonable for the officer to believe that we had a violation of the law completely different standards. And under these circumstances, I think is very reasonable for the officer to have concluded that there was a violation of the law, and to stop defendants vehicle. As a result, their own. The next issue. I think that I wish to address is whether or not this stop was wrongfully prolonged. The stop appears to have occurred at around 1131. And I think at 1140. The second officer appears so you've got about a nine minute delay during those nine minutes the arresting officers asking appropriate questions, investigating the traffic stop writing up the warning ticket and taking normal procedures. He is also excuse me, opposing Council contends in her brief that the mission of the stop was concluded at the time that the officer told the defendant that he was going to give him a warning ticket. Why, how do you respond to that argument, why are you saying that no, it wasn't the submission wasn't concluded at that time. I think that's the statement that the defendant is relying upon your honor is that the arresting officer stated at 11. Take a look 1139 30. So we're getting into seconds now, the officer says, looks like license looks like it's good to go. That's what the officer stated 1139 and 30 seconds and 30 seconds later the second officer arrived, and I think they're, they're putting their defense on that language suggesting that the arresting officer thought everything was concluded upon making a statement. Well, what about writing the warning ticket, is that included in the mission. Yes, it is. And that is what is continuing. The officer did make that statement at 1139 and 30 seconds, and that it looks like your license is good to go or worse to that effect. However, he was continuing to write the warning ticket at that time. And he testified that when his partner showed up I think it was Deputy wolf. When he showed up he was still in the process of writing a warning ticket. When he got out of the vehicle with his canine officer Deputy wolf got into the vehicle and continued writing the warning ticket. So the warning ticket was not complete upon deputy will survive. So do we know how long it would take to write out a warning ticket is that something that takes minutes as opposed to a few seconds. Well, in addition to the warning ticket and there's natural questions that are being asked of the defendant in investor. I guess it's called the leads in investigation when you call in and they give you background information, he was checking out the lease the vehicle he's checking out the status of the driver's license of the defendant outstanding warrants things of that nature. He did all that he did all that first, and then he told him, then he told the defendant, you know, you're good to go. So he made that statement after you've done all the checks, then he told them he was going to write out the warning ticket I have that it's 1139 20. But, and it wasn't until then. Wolf arrived, that thing started to change but while that warning ticket was being written out the hunt officer hunt was still asking him questions. Yes. Oh, wasn't he then prolonging this stuff by asking more questions. Well, if he was asking him questions unrelated to the stop. If that's what you're inferring your honor then yes, it would be an unfair prolonged stop, but if the questions he was asking were related to the stop having to do with his background investigation, then I would say no, it was not. However, just to be clear, I don't think the arresting officer stated to the defendant that quote you're good to go. I think he said that license looks like it's good to go. And that's a little different. You know, Council isn't the criteria and delay. Not whether you ask questions unrelated or related. The question is whether or not it caused the delay is actually running out, whatever you were running out. In other words, couldn't the officer have been writing out a warning ticket. And as doing so as we know being scriminators just running out stuff in the process as additional questions without creating any problem as far as the delay is concerned, unless there's an indication that somehow additional questions, cause the delay. In other words, if you are simultaneously running out the warning ticket and talking to this guy, asking questions in the process. That would be okay. Absolutely. Judging if I inferred otherwise I apologize that's not my intent. Just trying to seem to think that that's why I'm raising this you seem to suggest that there might be a problem with his asking questions, even though they occurred during the time he was running out the warning. No, the questions would have to have prolonged the stop asking what kind of days having and, and we're, you know, you can ask him anything you want so long as it does not unnecessarily prolong the stop. And in this instance because he was continuing to write the warning ticket throughout the stop the stop cannot be deemed unnecessarily prolonged. So can we look at this as a pretextual that the officer continued to talk to him wrote the ticket out very or the warning out very slowly in order to get the other officer there so that he could get out of the squad and do the canine sniff. If there was some evidence to support that judge, I believe you could, you know, look at it in that vein, but I don't think the evidence does support that there's case law that suggests that stop of 10 or 15, or even as much as 18 to 20 minutes to write a warning ticket is not unnecessarily prolonged. I don't know the specific amount of time necessary, and I would argue that it's probably changes from case to case, depending on the types of responses you get to your appropriate inquiries, you know, upon the initial stop. However, even if you were to believe that some of the, or the writing of the ticket might have been somewhat prolonged. The officer did have reasonable suspicion that something was amiss here. There were questions that he gave to this defendant that the defendant answered erroneously or suspiciously, and he asked the defendant In addition to that, whether or not he could conduct a dog sniff, and a defendant did not object to that search. So, why does that matter. He didn't need anyone's approval to conduct a dog sniff. And if it was going to be late, it's late. And if it's going to be not late, it's not late. What is asking for approval. Why is a nice gesture perhaps on his part, but it doesn't have anything to do with our assessment does it or should courts assessment. Did a few, if the court were to find that everything was concluded at the time of the request, and the defendant did not object to the request, then he's basically not objecting to the additional time necessary to perform it. So if it was the courts position that immediately prior to requesting a dog sniff. All activity associated with the issuance of a warning ticket were completed and defendant was ready to go. I think it would be the state's position that if the defendant does not object to a continuation of the stop necessary to perform the dog sniff, then he's waiving the trial. But that's not the state's theory in this case is it your theory is that while the ticket was still being written out the dog sniff occurred and the hit occurred. Wasn't that correct. That is correct chance but we're arguing in the alternative as well. Okay, well I just want to make sure because it seems to me that if your first position is correct and the trial court so filed and we agree, then asking the defendant doesn't have anything to do with anything. I would agree judge. That is our initial position. How do you respond to opposing counsel's argument that it was the state's burden to establish the foundation and reliability of the dog sniff of the handler and the ability of the dog to conduct the handler to conduct the search with the dog. Well, I would first note that I've not found any authority that supports that position, you know I've read the Harris case, and the cabal's case and I don't see that either one of them suggest that in the absence of the defendant objecting to the dogs reliability which the defendant did not do in this instance. So, that would be the initial position in the alternative I would suggest that we did for the state did present evidence of the dogs reliability by saying this is my dog. You know I've known this dog I'm a trained canine handler. This is my canine. He alerted in a manner that is appropriate with his training, which suggests that the dogs been trained, and it suggests that the officer commonly or traditionally relies upon the animal to make appropriate responses when conducting these dog steps. So, that is sufficient information to suggest that the dog is reliable, and that this officer has relied on that dog in the past. And if the defendant then wants to challenge that I think the state's made a private patient case, even if we're required to I'm not suggesting we were required to make a private patient case, but if the court finds we are, I think we've done so in this instance, and it is now incumbent upon the defendant to raise this issue and investigate or present some type of evidence that the dog is unreliable. So, so Council what's the bottom of that scale what's the bare minimum that the state has to do before saying you know this is this is Fido here, he seems to bark a lot of drugs. What, what, what is the bare minimum to say that this is at least reliable enough to admit it, or at least require the defendant to challenge it. Well I think judge, if the state or the deputy testifies that he has used a cane, a trained canine sniffing dog to to conduct a sniff. I think the state's met its burden. Yeah, if you're without knowing about the success rate, I mean, that's correct. He went to the point where we don't know his batting average. No, I don't think we need to get into that judge unless the defendant wants to make an issue. You know, if the defendant thinks that this dog for some reason is unreliable defendant has every right to raise that issue and the state has the burden to address it. However, if the defendant doesn't wish to challenge that you know the fact that we're using a common trained canine dog is sufficient. And I think it's traditionally done that way. By the way, Council. Aside from the fact that no evidence was directly presented contesting the dogs training or that, or the like. The defense counsel in his argument to the court on the motion to suppress raise any questions at all about the dog such as you know judge, there could have been more evidence about this dog and reliability, the state could have presented that, but didn't do so and maybe you should take that into consideration or words to that effect was any such argument made. No, not at all your honor there wasn't any argument made at all and that's why I argued in my brief that I think this is perfect case for forfeiture. You know, I had to defend it really thought there was some issue with regard to the dog he could have raised it, the state could have had an opportunity to satisfy the defendant's concerns. It wasn't done in this case of course because the defendant did not raise the issue. So I asked Miss Dalton, and she was arguing both the trial court error. By admitting this is for considering this evidence, and if she was addressing the dog stuff issue by claiming ineffective assistance of counsel if I understood it correctly she said both. So you think the first of those two arguments has been forfeited because of no action at the trial level. Absolutely. I think the first is forfeited and I think the second ineffective counsel has no support either because there's been no evidence whatsoever presented anywhere in this record that would suggest the dog was unreliable. So she cannot or the defendant cannot establish prejudice. And so, well her claim on unreal ineffective assistance of counsel would be trial counsel properly raise this and channels the dog. Apparently, the claim is that the results probably would have been different, or. That's, I guess the argument. What about that. I think that's conjecture without some type of evidence to suggest that the dog in fact is unreliable. You know, there's no reason to suspect that a trial judge would have come to that conclusion and prohibited this evidence, based on that assumption. I think trial court counsel defendants counsel have determined that questioning on further regarding his qualifications and the dogs reliability would have only bolstered that evidence. Absolutely. I think it would have completely answered the question to the court satisfaction, and we wouldn't be discussing this now. Anything further counsel. And if I answered just see those question appropriately I may have misunderstood it. No, you didn't. Okay. All right. If there's no further questions from the bench. Thank you, Your Honor. Okay. Thank you. Miss Dalton. Yes, Your Honor, as to whether or not the stop was unlawfully prolonged under Rodriguez it's clear that the authority for seizure ends when the tasks tied to the traffic infraction are or reasonably should have been completed. Well, right there. Two questions. First, are you contesting the finding that the officer is still writing a warning ticket, when the dog hit on the car and alerted. I do find that to be unbelievable judge yes well that's not my question. My question is that what you found to be unbelievable, but is there some basis in the record to show that's what happened. There's no basis in the record because that wasn't questioned of the officer other than the fact that he claimed that he had not finished writing the warning ticket at the time that his brother officer appeared but he could not recall how much of the ticket he had written. He had also testified that the warning ticket indicates basically the time the date the location and what the person was pulled over for, which is five different 1234 different pieces that he has to fill out in the matter of nine minutes between the traffic stop, and the time when deputy con informs Mr drain that his license looks like it's good to go. The record contain the ticket to show us that there's more than five pieces of information like the defendant's name and address and driver's license and seems like there's a lot more than five pieces. Even if there were three additional or four additional pieces it's it's you're literally laying out very basic information that can be collected and written matter of minutes. I think that what happened here is that between the traffic stop and the time that deputy con informs Mr drain that his license looks like it's good to go, that that warning ticket reasonably should have been completed. And I think that this court also made that determination and people versus said that to hold otherwise might encourage officers to hold on to paperwork and purposely delay finishing a warning to prolong the stop to continue questioning the defendant or conduct a dog sniff, and I think that's what happened. Thank you, but we the appellant did not put the ticket, the warning ticket in evidence, I'm sorry into the record for this court. Isn't that correct. We don't. There was no warning ticket entered into evidence to present to the court. Otherwise I certainly would have done so. The only thing that appellant could rely upon was the basic Illinois State Police blank warning ticket to show this court, what at the very most might be included in a warning ticket, and even we don't have that either. That was attached as an exhibit to appellant opening brief. So, did the trial court, make a finding as to whether or not the writing of the warning ticket was a newly delayed. So as to permit the dog sniff. I think the trial court said that there was some delay but the trial court did not find it to be an overabundance of delay. I don't think he used the word overabundance but he didn't seem to find that it was enough delay to grant the defendants motion and I think I think that's where the trial court made an error and not relying on Rodriguez, and when Rodriguez clearly stands for is when the authority for the seizure ends when read the tasks tied to the stop reasonably should have been completed. And I think there was delay here purposely in order to conduct the dog sniff, there was not enough to to assert some sort of reasonable suspicion here. And if we were to compare this case again to Sadiq because that was this court that made those decisions, and in comparing the two situations and circumstances of the offense in this case, essentially, what Deputy Hunt says is that Mr. Drain was conversing fairly well he wasn't moving a whole lot. He never said Mr. Drain was nervous or evasive he said he had vague answers because Mr. Drain didn't give a specific street number for his grandmother's address. He said his breathing intensified at some point in comparison to Sadiq where the driver had stopped in the middle of the road had been acting nervously, which was not contested by the appellant, the entirety of the traffic stop, amongst other factors that were considered reasonable suspicion that just don't exist in this case. The only other factor that Deputy Hunt indicated on the record was that Mr Drain had said he had a misdemeanor arrest. The record silent as to what Deputy Hunt found different from what was actually on his criminal history versus Mr Drain's answer, but regardless of that fact, Deputy Hunt characterize the difference as nothing crazy and not a big deal. Your time is up counsel. Thank you and Mr Landrigan for your presentations. The court will take this matter under advisement and stand in recess.